UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOUGLAS BIESKE,

    Plaintiff,

v.

ACCIDENT FUND INSURANCE
COMPANY,

    Defendant.

_____/

Lead Case No. 1:22-cv-1088

HON. JANE M. BECKERING

## OPINION AND ORDER

These consolidated cases are about the right of employees to refuse the COVID-19 vaccine contrary to their employers' vaccination mandates. Pending before the Court are omnibus motions to dismiss filed by Defendant in the above captioned lead case as well as Defendants in those cases that have been consolidated with this case for purposes of pretrial litigation. In accordance with the Magistrate Judge's February 13, 2024 Order (ECF No. 74[1]), the parties filed their motions as omnibus motions and separated the cases into three groups for purposes of the motions.[2] This Opinion and Order addresses the first group of cases ("Group 1"),[3] in which Defendants have filed

---

[1] The ECF numbers referenced in this Opinion and Order correspond to the filings in the lead case, Case No. 1:22-cv-1088.

[2] Although the parties filed three separate motions for three distinct groups within the consolidated cases, there appears to be a fourth group of nine cases for which Defendants filed neither an answer nor a motion to dismiss: cases numbered 1:22-cv-1101, 1:22-cv-1121, 1:23-cv-198, 1:23-cv-673, 1:23-cv-675, 1:23-cv-678, 1:23-cv-697, 1:23-cv-702, and 1:23-cv-710.

[3] Group 1 includes cases numbered 1:23-cv-658, 1:23-cv-659, 1:22-cv-1088, 1:22-cv-1098, 1:23-cv-670, 1:23-cv-668, 1:23-cv-509, 1:23-cv-195, 1:23-cv-196, 1:23-cv-510, 1:23-cv-511, 1:22-cv-1104, 1:23-cv-680, 1:22-cv-1100, 1:23-cv-690, 1:22-cv-1090, 1:23-cv-695, 1:22-cv-1091, 1:23-cv-200, 1:22-cv-1095, 1:22-cv-1113, 1:23-cv-698, 1:22-cv-1119, 1:22-cv-1092, 1:22-cv-1096,

motions for partial dismissal of Group 1 Plaintiffs' claims.  This Opinion and Order pertains to the motions for partial dismissal in Group 1 cases only.  For the reasons that follow, the Court denies the motions for partial dismissal.

## I.  BACKGROUND

### A.  Factual Background

The following facts are commonly alleged among the Group 1 Plaintiffs.  The allegations in the amended complaints concern the events surrounding the termination of Group 1 Plaintiffs' employment.

#### 1.  Defendants' COVID-19 Vaccination Policy

On or about November 1, 2021, Defendants announced a mandatory COVID-19 vaccination policy ("the Policy") for all employees and contractors, including those working remotely (Second Amended Complaint ("SAC") [ECF No. 77] ¶ 14).  Pursuant to the Policy, employees and contractors were required to receive at least the first dose of a two-dose vaccine by December 8, 2021, and to be fully vaccinated by January 4, 2022 or have an approved medical or religious accommodation by that date (*id.* ¶ 15).  According to Group 1 Plaintiffs, employees who were denied accommodation requests were automatically placed on unpaid leaves of absence from December 9, 2021 until January 5, 2022 (*id.* ¶ 17).

#### 2.  Accommodation Process

Group 1 Plaintiffs allege that Defendants conducted "a series of ambush-style interrogations" with employees who submitted religious and medical accommodation requests, and interviewees were put under time pressure and warned to answer questions or else they would

---

1:22-cv-1094, 1:23-cv-704, 1:23-cv-199, 1:22-cv-1105, 1:23-cv-708, 1:23-cv-709, and 1:23-cv-711.

be denied accommodation (*id.* ¶¶ 19, 22–24). According to Group 1 Plaintiffs, Defendants' President and CEO, Daniel J. Loepp, told employees in the weeks prior to the vaccination deadline that he anticipated denying accommodation requests and terminating "many employees" (*id.* ¶¶ 34–35). Group 1 Plaintiffs further allege that Defendants' Director of Employee and Labor Relations, Bart Feinbaum ("Feinbaum"), who was responsible for deciding which employees received accommodations to the Policy, told other employees in management during a recorded conference call that he doubted the validity of any religious accommodation request (*id.* ¶¶ 41–42). According to Group 1 Plaintiffs, Feinbaum indicated that after performing personal research, he believed that Christianity, Judaism, and Islam all allowed for vaccination against COVID-19, and he declared that Defendants' religious accommodation interviews would be conducted like "mini depositions" with the goal of the interview process being to pressure employees to get vaccinated (*id.* ¶¶ 43–45). Group 1 Plaintiffs allege that Feinbaum also told employees who would be conducting the religious accommodation interviews that Defendants were not allowed to accept all religious accommodation requests (*id.* ¶ 46).

    **3.**     <u>**Termination**</u>

Group 1 Plaintiffs are among the approximately 250 employees who requested religious accommodations to the Policy and whose employment was terminated by Defendants on January 5, 2022 (*id.* ¶ 31). According to Group 1 Plaintiffs, Defendants granted accommodation to the Policy for other employees with religious beliefs that differ from those of Group 1 Plaintiffs, and Defendants treated Group 1 Plaintiffs less favorably than employees who were granted exemption from the Policy because of Group 1 Plaintiffs' religious beliefs (*id.* ¶¶ 92–93).

### B.  Procedural Posture

After filing Equal Employment Opportunity Commission ("EEOC") Charges of religious discrimination and receiving right-to-sue letters from the EEOC, Group 1 Plaintiffs initiated their respective actions at various times in 2022 and 2023 with complaints against Defendants.  On June 1, 2023, the Magistrate Judge issued an Order consolidating the cases for purposes of pretrial litigation (ECF No. 38).  On November 28, 2023, the Magistrate Judge held a settlement conference for the consolidated cases, during which the parties did not reach a resolution (Minutes, ECF No. 70).

On February 13, 2024, the Magistrate Judge conducted a status conference and ordered the parties to file motions to dismiss or motions for judgment on the pleadings as omnibus-type filings (Order, ECF No. 74).  After the parties filed omnibus motions for judgment on the pleadings, the Court, without expressing any view as to the merits of the motions, afforded Plaintiffs the opportunity to cure the allegedly inadequate claims by granting Plaintiffs leave to file amended complaints, as allowed by Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure (ECF No. 76).  Before the Court's April 5, 2024 deadline to do so, Plaintiffs in the consolidated cases filed amended complaints (*see, e.g.*, SAC).  In their amended complaints, Group 1 Plaintiffs allege the following three claims:

  I.    Violation of Title VII Religious Discrimination, Failure to Accommodate (42 U.S.C. § 2000e, *et seq.*);

  II.   Violation of Title VII Religious Discrimination, Disparate Treatment (42 U.S.C. § 2000e, *et seq.*); and

  III.  Violation of the Elliot-Larsen Civil Rights Act of 1974 ("ELCRA"), Disparate Treatment and Intentional Discrimination (M‍ICH. C‍OMP. L‍AWS § 37.2101, *et seq.*)

(SAC, ECF No. 77 at PageID.777, 780, 782).  The Court dismissed the pending motions for judgment on the pleadings as moot and issued a briefing schedule for any future motions to dismiss the amended complaints (ECF No. 78).

Defendants filed the instant omnibus motions to dismiss the amended complaints on May 2 and 3, 2024 (ECF No. 82), to which Group 1 Plaintiffs filed responses in opposition (ECF No. 85), and Defendants filed replies to the responses (ECF No. 87).  Defendants have filed answers to Group 1 Plaintiffs' amended complaints only as to some of the claims therein.  Having considered the parties' submissions, the Court concludes that oral argument is not necessary to resolve the issues presented.  *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Defendants' motions for partial dismissal are filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  FED. R. CIV. P. 12(b)(6).  Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]"  FED. R. CIV. P. 12(b)(6).  In turn, Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed—but early enough not to delay trial.  FED. R. CIV. P. 12(c).  A motion for judgment on the pleadings pursuant to Rule 12(c) is resolved in the same manner as a motion to dismiss under Rule 12(b)(6).  *Gavitt v. Born*, 835 F.3d 623, 639 (6th Cir. 2016).

To survive a motion to dismiss, a complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. An assessment of "the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," but the court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt*, 835 F.3d at 640.

### B. Discussion

1. **Motion for Partial Dismissal**

Defendants move for dismissal of Group 1 Plaintiffs' disparate-treatment claims under Title VII and the ELCRA in Counts II and III (ECF No. 82 at PageID.821–22). Defendants argue that Group 1 Plaintiffs fail to allege plausible disparate-treatment claims because the amended complaints do not contain allegations of "a *single* fact establishing that Defendants treated more

favorably any similarly situated employee (i.e., a non-vaccinated employee with the same supervisor, union status, experience, work performance, etc.) outside of [Group 1 Plaintiffs'] alleged protected class (meaning, an employee with different religious beliefs than Plaintiffs)" (ECF No. 83 at PageID.840) (emphasis in original).  Defendants further argue that Group 1 Plaintiffs fail to allege a direct evidence claim of disparate treatment because the allegations require impermissible inferences to arrive at "direct evidence" of discriminatory intent, and Feinbaum's alleged statements bear no relation to the specific employment action (termination) taken against Group 1 Plaintiffs (*id.* at PageID.847–48).

Group 1 Plaintiffs argue in response that they plausibly allege direct evidence of disparate treatment because they allege that Feinbaum told management employees that he doubted the validity of any religious accommodation requests, stated in human resources meetings that he believes that Christianity, Judaism, and Islam allow for vaccination against COVID-19, and instructed Defendants' interviewers to conduct each accommodation interview like a "mini deposition" designed to pressure each employee to get vaccinated against COVID-19 (ECF No. 85 at PageID.919–920).  Moreover, Group 1 Plaintiffs argue, Defendants directed employees conducting religious accommodation interviews not to accept all religious accommodation requests (*id.* at PageID.920).  Group 1 Plaintiffs further argue that they are not required to allege facts establishing prima facie employment discrimination claims to survive a motion to dismiss, and their allegations of disparate treatment are sufficient at the motion to dismiss stage (*id.* at PageID.923).

Defendants' arguments lack merit.

Disparate-treatment claims require plaintiffs to demonstrate intentional discrimination based on their religion.  *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).  Courts analyze ELCRA

disparate-treatment discrimination claims under the same standards for discrimination claims brought under Title VII. *Crane v. Mary Free Bed Rehab Hosp.*, 634 F. App'x 518, 521 (6th Cir. 2015); *see also Sutherland v. Mich. Dep't of Treas.*, 344 F.3d 603, 614 n.4 (6th Cir. 2003). A plaintiff may demonstrate discrimination with direct evidence, *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005), or circumstantial evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006). In contrast, circumstantial evidence "does not on its face establish discriminatory animus but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. Hite's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Ultimately, circumstantial evidence will be reviewed under the *McDonnell Douglas* burden-shifting analysis, requiring a plaintiff to establish the prima facie case of discrimination. *Columbus Metro.*, 429 F.3d at 238 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

To survive a motion to dismiss, a plaintiff's complaint need not establish the elements of the prima facie case but need only provide "an adequate factual basis" to support these elements. *James v. Hampton*, 592 F. App'x 449, 450 (6th Cir. 2015); *see also Lucky v. Landmark Med. of Michigan, P.C.*, 103 F.4th 1241, 1244 (6th Cir. 2024) (quoting *Savel v. MetroHealth System*, 96 F.4th 932, 943 (6th Cir. 2024) (explaining that the prima facie case "is an evidentiary standard, not a pleading requirement")). In *Savel*, the Sixth Circuit confirmed that "[a] plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in the[] complaint." 96 F.4th at 943 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). "Plaintiffs . . . just need to plausibly allege that they were . . . treated differently because of their religion." *Savel*, 96

8

F.4th at 943. "If a reasonable court can draw the necessary inference of discrimination from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id.* (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)). Accordingly, the Court assesses the allegations in the amended complaints to determine whether Group 1 Plaintiffs have provided an adequate factual basis to plausibly support that they were treated differently because of their religion.

Group 1 Plaintiffs allege that Feinbaum's purported statements that he doubted the validity of any religious accommodation request, that he believed that Christianity, Judaism, and Islam allowed for vaccination, and that the goal of the interview process was to pressure employees into vaccinations constitute direct evidence of religious discrimination (SAC ¶¶ 36–42). However, Feinbaum's statements as represented in the allegations do not rise to the level of "express statement[s] of a desire to remove employees in the protected group," nor do they reflect discriminatory animus. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Accordingly, at this stage, prior to discovery, Group 1 Plaintiffs do not present direct evidence that would require a conclusion of unlawful discrimination. *Oberlin Coll.*, 440 F.3d at 359; *see Keys*, 684 F.3d at 609 ("Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims.").

Nonetheless, Group 1 Plaintiffs' allegations, accepted as true, give rise to plausible claims of disparate treatment. The allegations of Feinbaum's statements, taken together, would allow a factfinder to draw a reasonable inference that discrimination occurred and was at least a motivating factor in Group 1 Plaintiffs' termination. The Court notes that the transcript of the recorded meeting with Feinbaum (ECF No. 87-1), which Defendants attach to their reply brief, provides

9

additional context for some of the alleged statements and possibly casts doubt on their veracity; however, the transcript does not wholly impeach Group 1 Plaintiffs' representation of Feinbaum's statements, and a more nuanced assessment of the transcript and the factual accuracy of Group 1 Plaintiffs' allegations is inappropriate at the pleadings stage, absent a full evidentiary record. *See Gavitt*, 835 F.3d at 640.

Although Group 1 Plaintiffs' allegations do not establish that Feinbaum—and thereby Defendants—did, indeed, discriminate against Group 1 Plaintiffs based on their religious beliefs, Group 1 Plaintiffs' allegations of Feinbaum's statements along with the allegations that Defendants allowed other unvaccinated employees without Group 1 Plaintiffs' same religious beliefs to be exempted from the Policy are enough to "nudge" Group 1 Plaintiffs' claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. Discovery into Defendants' treatment of similarly situated employees and possible discriminatory motives should not be foreclosed at this early stage of the litigation.

In sum, at this stage, Group 1 Plaintiffs have pleaded sufficient factual content that, taken as true, plausibly alleges disparate-treatment claims under Title VII and the ELCRA in Counts II and III.

**2. Request for Sanctions**

In their briefs in response to the motions for partial dismissal, Group 1 Plaintiffs request that this Court "sanction Defendants for proceeding with its [*sic*] Omnibus Motion in the face of published binding legal authority" from *Savel*, 96 F.4th at 932 (ECF No. 62 at PageID.788, 821). Group 1 Plaintiffs' request lacks merit.

Rule 11(b)(2) mandates that attorneys certify that "the claims, defenses, and other legal contentions" in their filings "are warranted by existing law or by a nonfrivolous argument for

10

extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(2). In general, "the central purpose of Rule 11 is to deter baseless filings in district court[.]" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Thus, in short, frivolous legal contentions are sanctionable under Rule 11(b)(2)." *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023) (internal quotation marks omitted).

Here, the Court does not find that the legal contentions in Defendants' motions for partial dismissal are "baseless" within the meaning of Rule 11, even though their interpretation of *Savel*, 96 F.4th at 932, differs from that of Group 1 Plaintiffs and despite the Court's denial of their motions. The pleading requirements in Title VII religious discrimination cases are evolving in the Sixth Circuit, and the Court of Appeals for the Sixth Circuit continues to clarify the contours of colorable Title VII religious discrimination claims, as illustrated not only by *Savel*, 96 F.4th at 932, but also by the recent decision in *Lucky*, 103 F.4th at 1244. Especially given this Court's multiple decisions in the past year granting motions to dismiss claims similar to those at bar, *see, e.g.*, *Dzik v. Accident Fund Ins. Co.*, No. 1:23-CV-193, 2024 WL 662485, at *1 (W.D. Mich. Jan. 25, 2024), *Masarik v. COBX Co.*, No. 1:23-cv-696, Op. & Or., ECF No. ECF No. 39 (W.D. Mich. Apr. 5, 2024), Defendants' motions are far from "frivolous." *King*, 71 F.4th at 528. As the Advisory Committee notes, Rule 11 motions should not be employed to "emphasize the merits of a party's position[.]" FED. R. CIV. P. 11 1993 Amendments Advisory Committee Notes. In short, although Defendants' omnibus motions for partial dismissal are properly denied, the Court is not convinced that an award of sanctions to Group 1 Plaintiffs is warranted.

### III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' omnibus motions for partial dismissal of Group 1 Plaintiffs' amended complaints (ECF No. 82) are DENIED.

**IT IS FURTHER ORDERED** that Group 1 Plaintiffs' request for sanctions is DENIED.


Dated:  July 9, 2024                                              /s/ Jane M. Beckering  
                                                                                JANE M. BECKERING  
                                                                                United States District Judge